UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| PROFESSIONAL BACKGROUND SCREENING ASSOCIATION,<br><br>Plaintiff,<br><br>vs.<br><br>KEN PAXTON IN HIS OFFICIAL CAPACITY AS ATTORNEY GENERAL OF THE STATE OF TEXAS,<br><br>Defendant. | Civil Action No. 1:25-cv-125<br><br>**COMPLAINT** |

Plaintiff Professional Background Screening Association ("PBSA"), by counsel, files this Complaint against Defendant Ken Paxton in his official capacity as Attorney General of the State of Texas ("Attorney General"), seeking declaratory judgment and injunctive relief. In support, PBSA alleges as follows:

INTRODUCTION

1. Through the enactment and subsequent amendments to the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681, *et seq.*, Congress has created a comprehensive regulatory scheme for consumer reports and consumer reporting agencies, including background screening reports and the companies that prepare them.

2. Congress's purpose in enacting the FCRA was to balance the dual goals of facilitating the intricate nationwide system of consumer reporting that is relied upon by numerous industries and protecting consumers.

3. After carefully weighing industry and consumer interests, Congress made specific determinations regarding the content that can be included in consumer reports, and codified those decisions in Section 605 of the FCRA, 15 U.S.C. § 1681c.

4. As relevant to criminal history, in particular, the FCRA prohibits the reporting of non-conviction criminal records or any other adverse items of information that predate the report by more than seven years, but specifically allows the reporting of conviction records of any age. *See* 15 U.S.C. §§ 1681c(a)(2), 1681c(a)(5).

5. Congress's highly specific decision regarding what type of criminal records can and cannot be included in a consumer report reflects a reasonable balancing of interests between the needs of background screening customers and the protection of consumers.

6. And Congress's decision in this regard makes sense. A criminal conviction is a highly relevant factor for employers and landlords to consider for ensuring the safety of their workplaces, living spaces, the consumers they serve, and predicting the reliability of the prospective employee or tenant, even many years after the conviction. The conviction is a matter of public record and necessarily includes a determination of guilt. Due to the infinite variety of circumstances unique to every workplace or tenancy (including the people they manage, work with, live with or next to, provide services for as well as the potential access to sensitive data of people and businesses), Congress has left to employers and landlords the ability to determine for themselves how many years back a specific type of conviction may remain relevant for their purposes. That relevancy determination may also be based on consideration of the conviction alongside other convictions an applicant may have to make an informed decision for the safety of their workplace and housing communities.

7. To ensure this carefully calibrated, nationwide regime did not become hopelessly fragmented through diverse state-level legislation, Congress provided—in express terms—that the FCRA preempts state laws enacted after September 30, 1996 "relating to information contained in consumer reports." *Id.* § 1681t(b)(1)(E).

8. Individual states should not be permitted to undercut Congress's careful decision-making on the issue of the content of consumer reports by setting their own rules on when consumer reports can and cannot report certain information—including as to criminal history. If allowed to do so, the result would be a patchwork of varying regulatory requirements that would prevent consumer reporting agencies from efficiently operating on a nationwide scale, thus undermining Congress's goal of facilitating efficient consumer reporting that is necessary to ensure low transaction costs for consumers seeking credit, employment, housing, and many other benefits. Inconsistency in the content of background screening reports across states would also inhibit employers' ability to consider and treat applicants equally regardless of what state they live or work in, and would create confusion for consumers who will be left with uncertainty as to what information may be included in their report based on what states they have lived in or are applying in.

9. Texas has violated the FCRA's express-preemption mandate through provisions of the Texas Fair Credit Reporting Act ("Texas FCRA"), Tex. Bus. & Com. Code § 20.01, *et seq.* This state law purports to override federal law by imposing different and more onerous requirements on the contents that can be included in consumer reports. *Id.* § 20.05(a).

10. Specifically, the Texas FCRA seeks to undermine Congress's determinations regarding the content of consumer reports by prohibiting consumer reporting agencies from including in their reports conviction records that predate the report by more than seven years.

11. Texas's attempt to override Congress's careful decision-making regarding the contents of consumer reports threatens the national uniformity in consumer reporting regulation that Congress has endeavored to ensure.

12. A patchwork of inconsistent state-level proscriptions regarding what can and cannot be included in a consumer report would undermine the consumer reporting system. State laws inconsistent with the FCRA and other state's laws will result in substantially increased regulatory costs that will reduce background screening companies' ability to continue their vital role in support of industry, will hamstring employers and property managers who rely on background screening reports to ensure safe workplaces and residencies, and ultimately will flow to consumer applicants in the form of increased transaction costs, higher application fees to rental applicants or reduced wages to employees to cover higher overhead costs of background screening, and reduced access to employment opportunities, housing, and many other consumer benefits.

13. In particular, the Texas FCRA will undermine the ability of background screeners providing criminal background checks to issue reports in Texas, causing them to either increase their costs or choose not to provide services in Texas. This will reduce the ability of employers, landlords, and other users of screening reports in Texas to access reliable and reasonably priced background screening. That in turn will predictably result in failures to properly and safely screen the criminal histories of applicants, or will cause some organizations to bypass the use of highly regulated industry experts in an attempt to search public records utilizing their own staff to screen applicants themselves, resulting in over-rejection of otherwise qualified applicants due to misunderstood or misidentified criminal records.

14. Congress enacted the FCRA and its express-preemption provisions to avoid this exact sort of state-level regulatory mayhem and its deleterious effects on all manner of consumers.

Texas's attempt to undermine the uniform federal standard is expressly preempted by the FCRA and stands as an obstacle to Congress's purposes.

## PARTIES

15. PBSA is an international trade association of over 800 member companies that provide employment, insurance, and tenant background screening and related services to virtually every industry around the globe. The consumer reports prepared by PBSA's background screening members are used by employers, property managers, and volunteer organizations every day in every state to ensure communities and workplaces are safe for all who work, reside, or visit them.

16. Defendant Attorney General Ken Paxton is the state official responsible for enforcement through civil action of Texas's laws, and specifically is tasked with enforcement of the Texas FCRA, Tex. Bus. & Com. Code § 20.01, *et seq.*, pursuant to Tex. Bus. & Com. Code § 20.11, *et seq.*

## JURISDICTION AND VENUE

17. This action arises under the FCRA, 15 U.S.C. §§ 1681, *et seq.*, and the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202. The claims asserted in this action are based upon and seek interpretation of Sections 605 and 625 of the FCRA, 15 U.S.C. §§ 1681c and 1681t, which preempt the State of Texas's attempt to regulate the content of consumer reports through the Texas FCRA. Accordingly, this Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331.

18. Venue is proper in this District because Defendant Paxton resides in this District and because a substantial part of the events or omissions giving rise to the claims occurred within this District. *See* 28 U.S.C. § 1391(e)(1).

## THE FAIR CREDIT REPORTING ACT

19. In 1970, Congress enacted the FCRA, finding crucial sectors of the U.S. economy are "dependent upon" consumer reporting, which promotes the efficiency of those sectors, and "public confidence" in consumer reporting "is essential to the continued functioning" of those sectors. *See* 15 U.S.C. § 1681(a)(1).

20. Congress further acknowledged the vital role of consumer reporting throughout the economy, noting the FCRA's animating purpose was to enable the consumer reporting system to effectively "meet[] the needs of commerce for consumer credit, personnel, insurance, and other information" while ensuring a "fair and equitable" process for consumers. *Id.* § 1681(b).

21. Indeed, although the title of the Act narrowly references "Fair *Credit* Reporting," its scope is far broader than credit reporting, covering all manner of consumer reports used for employment screening, tenant screening, insurance, and many other purposes that are vital to a wide range of industries.

22. Members of Congress have described the consumer reporting system as a "national delivery system" which, "like our national interstate highway system, like our national power grid, like our national communications system, . . . deliver[s] an incredible amount of value and [is] very important to the economy." *Hearing Before the Comm. on Financial Services*, 108th Cong. 5-6 (2003) (statement of Spencer Bachus, U.S. Representative for the State of Alabama).

23. Congress recognized an "elaborate mechanism has been developed" by private market participants "for investigating and evaluating the credit worthiness, credit standing, credit capacity, character, and general reputation of consumers." 15 U.S.C. § 1681(a)(2).

24. Thus, to allow the elaborate industry-developed mechanism to continue meeting the needs of commerce while still ensuring fair and equitable treatment for consumers, Congress

engaged in the rigorous task of balancing these dual interests by specifying standards with regard to certain specific aspects of consumer reporting.

25. One of the areas of consumer reporting the FCRA specifically addresses is the content of consumer reports – what can and cannot be included on a consumer report.

26. Congress's careful decisions about the content of consumer reports are codified in 15 U.S.C. § 1681c, entitled "Requirements relating to information contained in consumer reports."

27. Section 1681c(a) delineates the "[i]nformation excluded from consumer reports," and instructs that other than in some exception situations, "no consumer reporting agency may make any consumer report containing any of the following items of information" that are then listed expressly in the statute.

28. Those "items of information" that Congress chose to ban from consumer reports include, among other items: civil suits, civil judgments, or arrest records that antedate the report by more than seven years (or the governing statute of limitations period, if longer), and any other adverse item of information "other than records of convictions of crimes" that antedate the report by more than seven years. *Id.* §§ 1681c(a)(2), 1681c(a)(5).

29. Most relevant here, in weighing the multitude of policy considerations and after balancing the dual interests of effective consumer reporting and consumer protection, Congress expressly chose not to prohibit <u>at all</u> the reporting of criminal conviction records, regardless of the age of the record.

FEDERAL PREEMPTION AND THE FCRA

30. The Supremacy Clause of the United States Constitution provides "the laws of the United States . . . shall be the supreme law of the land; and the judges in every state shall be bound

thereby, anything in the Constitution or laws of any State to the contrary notwithstanding." U.S. Const. Art. VI, para. 2.

31.     Under the Supremacy Clause, federal preempts a state law "when (1) 'compliance with both state and federal law is impossible,' *or* (2) state law 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.'" *Aldridge v. Mississippi Dept. of Corrections*, 990 F.3d 868, 875 (5th Cir. 2021) (emphasis added).

32.     Against this backdrop of the Supremacy Clause and federal preemption generally, Congress has provided how the FCRA would interact with state law, including its preemptive effect with regard to state law. Those provisions are found in Section 625 of the FCRA, codified at 15 U.S.C. § 1681t, entitled "Relation to State laws."

33.     As a general matter, Congress stated the FCRA "does not annul, alter, affect, or exempt . . . the laws of any State with respect to the collection, distribution, or use of any information on consumers . . . ," *id.* § 1681t(a), thus referencing a broad category of state laws that may go far beyond consumer reporting and ensuring that the express preemptive scope of the FCRA could be targeted. Nonetheless, Congress included in that general rule an important exception: state laws that are "inconsistent with any provision of" the FCRA are preempted "to the extent of the inconsistency." *Id.*

34.     Congress also listed out several specific exceptions to the general rule to describe areas in which certain subject matters regulated under the FCRA will preempt all state laws. *See id.* § 1681t(b). In short, Congress chose to list out the sections of the FCRA in which its careful decision-making to balance marketplace needs with consumer protection must not and cannot be interfered with by the states. Any attempted regulatory action by the states within those defined spaces is preempted.

35. Included among those expressly listed subject matters is "information contained in consumer reports," which Congress addressed in Section 605 of the FCRA, 15 U.S.C. § 1681c. Specifically, the FCRA states: "No requirement or prohibition may be imposed under the laws of any State . . . with respect to any subject matter regulated under . . . section 1681c of this title, relating to information contained in consumer reports . . . ." *Id.* § 1681t(b)(1)(E).

### TEXAS FAIR CREDIT REPORTING ACT

36. The Texas legislature passed the Texas FCRA in 1997, codified as Tex. Bus. & Com. Code § 20.01, *et seq.*, after the federal preemption cut-off date of September 30, 1996 provided under 15 U.S.C. § 1681t(b)(1)(E).

37. Section 20.05 of the Texas FCRA, entitled "Reporting of Information Prohibited," prohibits reporting (1) any record of conviction predating the report by more than seven years and (2) any other item or event that predates the consumer report by more than seven years. Tex. Bus. & Com. Code §§ 20.05(a)(4), 20.05(a)(6). Accordingly, these sections prohibit reporting any information that predates the report by more than seven years, including criminal convictions and non-adverse information.

38. These provisions conflict with Congress's decision in Section 1681c(a)(5) of the FCRA to not prohibit the reporting of criminal conviction records or non-adverse information, regardless of age.

39. Upon information and belief, the Attorney General intends to use his authority to enforce Tex. Bus. & Com. Code § 20.05 to prohibit the reporting of the criminal conviction records that PBSA's members currently report in compliance with the requirements of the FCRA.

## ENFORCEMENT OF THE TEXAS FCRA'S PREEMPTED PROVISIONS WILL HARM PBSA'S MEMBERS, THE INDUSTRIES THEY SERVE, AND CONSUMERS

40. The interests that PBSA seeks to protect in this action are central to its mission. PBSA's members will suffer harm if they are forced to comply with provisions of Texas state law that are preempted by federal law. This Court's favorable determination concerning the question of federal preemption raised in this Complaint and a grant of the requested relief will prevent this harm.

41. PBSA's membership includes many background screening companies operating on a nationwide basis, including in Texas.

42. Many of PBSA's members have prepared consumer reports for issuance in Texas that contain records of criminal convictions that predate the report by more than seven years, consistent with the requirements of the FCRA.

43. By enforcing onerous prohibitions on the content of consumer reports that conflict with the requirements provided by Congress in the FCRA, Texas has forced consumer reporting agencies to undertake the burden of developing, implementing, and continuing to maintain regulatory compliance procedures for consumer reports issued in Texas that are separate and distinct from the procedures used for reports issued elsewhere. The burden and cost of those measures will inevitably result in higher transaction costs for the multitude of industries that the consumer reporting agencies serve, higher application costs or interest charges to consumers, and a reduction in access to employment and housing for consumers.

44. If various states enact their own unique regulations regarding what can and cannot be included in a consumer report (as Texas has done), the result will be a disjointed patchwork of state regulation that undermines and stands as an obstacle to the uniform nationwide regulation of

the contents of consumer reports enshrined in the FCRA as a result of Congress's careful consideration and balancing of industry and consumer interests.

45. Furthermore, Texas's prohibitions on reporting criminal records will force consumer reporting agencies that are members of PBSA to exclude from their reports indisputably accurate information that is relevant and necessary for informed determinations employment, tenancy, and other eligibility decisions.

46. Hindering the reporting of public records will cause harm to a multitude of industries, consumers, and society in general. Users of consumer reports in many industries – particularly background screening reports for employment or housing purposes – are highly interested in knowing about criminal convictions, including those that are more than seven years old, for the legitimate purpose of evaluating whether an individual is qualified to work or reside in a workplace or community. Indeed, such screening is often conducted in the context of childcare, youth sports programs, elder care, and home services, to serve and protect particularly vulnerable populations. These types of background checks are critical for maintaining safe workplaces and communities.

47. A 2021 report compiled by the United States Department of Justice's Bureau of Justice Statistics (BJS) analyzed recidivism rates in 24 states (including Texas) and concluded that 82% of individuals released from state prisons were rearrested at least once during the 10 years following release, and more than 20% were rearrested in year ten. BJS, *Recidivism of Prisoners Released in 24 States in 2008: A 10-Year Follow-Up Period (2008-2018)* 1 (2021).

48. Such high recidivism rates – even well after seven years, with more than 20% of study participants being rearrested each year in years 7, 8, 9, and 10 – demonstrate why criminal

records are relevant and important items of information for employers, landlords, and other users of background check reports.

49. Enabling employers and housing providers to ensure safe environments for their employees, tenants, and their customers serves the interests of consumers and society at large.

50. Indeed, in recent years, Texas has tragically experienced the consequences of reduced access to criminal records for background screening purposes. On Sunday, November 5, 2017, former Air Force member Devin Patrick Kelley opened fire inside First Baptist Church in Sutherland Springs, Texas, killing 26 churchgoers, including children and a pregnant woman, and wounding 22 more. *Holcombe v. United States*, No. SA-18-CV-555-XR, 2021 WL 2821125, at *21-22 (W.D. Tex. 2021).* After a bench trial brought in this District by survivors and family members, it was determined that the Air Force had negligently failed to submit to the FBI information regarding Kelley's conviction for domestic assault in 2014. *Id.* at *51-52. That failure allowed Kelley to clear the background check necessary to purchase the firearms he used in the Sutherland Springs shooting. *Id.* As found by District Judge Xavier Rodriguez, "the evidence show[ed] that — had the Government done its job and properly reported Kelley's information into the background check system — it is more likely than not that Kelley would have been deterred from carrying out the Church shooting." *Id.* at *51. Given this tragic outcome, Texas should be encouraging and facilitating the use of criminal records in background screening, not seeking to prevent it.

---

* *See also* Mark Berman, *Air Force mostly responsible for church massacre in Sutherland Springs, Tex., judge says*, The Washington Post (July 7, 2021, 3:46 PM), https://www.washingtonpost.com/national/sutherland-springs-shooting-air-force/2021/07/07/5353fb46-df36-11eb-b507-697762d090dd_story.html.

51. In sum, Texas's prohibitions on reporting criminal records under the Texas FCRA will harm PBSA's consumer reporting agency members by impeding their ability to report accurate and predictive data relied on by their customers for employment, housing, and other legitimate purposes.

52. PBSA's members will be forced to make material changes to their day-to-day business operations to comply with the Texas FCRA and cease reporting information that they currently report in full compliance with the federal FCRA.

53. Those required business changes will impose a higher cost of doing business in Texas, as PBSA's members preparing reports for issuance in Texas will be required to implement procedures to (1) identify information in their databases that is or may be prohibited by the Texas FCRA and (2) prevent the inclusion of such data in reports issued in Texas.

54. Implementing the business changes and procedures required to comply with the Texas FCRA will require significant expenditures of time and resources.

55. Reducing or eliminating the availability of these records will also harm users of background screening consumer reports in virtually every industry and consumers alike, by preventing consideration of vitally relevant information that ensures the safety of workplaces and communities and reduces the risks of default, repossession/foreclosure, and future crime.

56. By limiting the ability of consumer reporting agencies to report information that Congress has deemed reportable, Texas has forced those consumer reporting agencies to make material changes to the way consumer reports are prepared and furnished in Texas. This disrupts the nationwide consumer reporting system that Congress sought to promote, and it inhibits the ability of users of background screening reports from investigating and evaluating consumers using the information deemed relevant for this purpose by Congress.

## COUNT I – DECLARATORY JUDGMENT

57. PBSA incorporates by reference the preceding paragraphs as if fully restated herein.

58. The Texas FCRA purports to prohibit including in a consumer report conviction records predating the report by more than seven years.

59. This prohibition improperly seeks to regulate the information contained in consumer reports, a subject matter regulated under 15 U.S.C. § 1681c.

60. This prohibition improperly seeks to regulate information specified with particularity as permissible in 15 U.S.C. § 1681c(a)(5) (i.e., records for criminal cases leading to convictions regardless of age).

61. Because the Texas FCRA attempts to prohibit the inclusion of information in consumer reports that the FCRA expressly allows to be included, those provisions of the Texas FCRA are expressly preempted by the FCRA under 15 U.S.C. § 1681t(b)(1)(E).

62. This prohibition on the information that may be included in consumer reports is also inconsistent with the requirements, provisions, and purpose of the FCRA. Thus, this provision of the Texas FCRA is expressly preempted by the FCRA under the express "inconsistency" preemption provided by 15 U.S.C. § 1681t(a).

63. Finally, this prohibition stands as an obstacle to the accomplishment of Congress's objectives in passing the FCRA, including to provide for a uniform nationwide standard regarding the content of consumer reports that will support accurate and reliable consumer reporting for credit, employment, housing, and other legitimate purposes. Because the Texas FCRA's provisions regarding the information contained in a consumer report "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress," this provision of the Texas FCRA is implicitly preempted by federal law. *Aldridge*, 990 F.3d at 875.

64. Because PBSA's members must either make material operational changes to comply with § 20.05, or expose themselves to a substantial threat of enforcement by the Attorney General, there is an actual controversy over which this Court has jurisdiction to award declaratory relief under 28 U.S.C. § 2201, *et seq.*

65. Accordingly, PBSA requests that the Court declare that Tex. Bus. & Com. Code § 20.05 is preempted by the FCRA.

## COUNT II – INJUNCTIVE RELIEF

66. PBSA incorporates by reference the preceding paragraphs as if fully restated herein.

67. The Texas FCRA purports to prohibit including in a consumer report conviction records predating the report by more than seven years.

68. This prohibition improperly seeks to regulate the information contained in consumer reports, a subject matter regulated under 15 U.S.C. § 1681c, and is thus preempted.

69. This prohibition also stands as an obstacle to the accomplishment of Congress's objectives in passing the FCRA, including to provide for a uniform nationwide standard regarding the content of consumer reports that will support accurate and reliable consumer reporting for employment, housing, and other legitimate purposes.

70. This prohibition will harm PBSA's consumer reporting agency members by impeding their ability to report accurate and predictive data relied on by their customers for employment, housing, and other legitimate purposes. Reducing or eliminating the availability of these records will also harm users of background screening consumer reports in virtually every industry and consumers alike, by preventing consideration of vitally relevant information that ensures the safety of workplaces and communities and reduces the risks of default, repossession/foreclosure, and future crime.

71. The interests that PBSA seeks to protect in this action are central to its mission. PBSA's members will suffer substantial harm if they are forced to comply with provisions of Texas state law that are preempted by federal law. This Court's favorable determination concerning the question of federal preemption raised in this Complaint and a grant of the requested relief will prevent this harm.

72. Because the Texas FCRA attempts to prohibit the inclusion of information in consumer reports that the FCRA expressly allows to be included, those provisions of the Texas FCRA are expressly preempted by federal law. 15 U.S.C. § 1681t(b)(1)(E).

73. Because the Texas FCRA's provisions regarding the information contained in a consumer report are inconsistent with the provisions and purpose of the FCRA, those provisions of the Texas FCRA are also expressly preempted by the FCRA under the "inconsistency" preemption provided by 15 U.S.C. § 1681t(a).

74. Because the Texas FCRA's provisions regarding the information contained in a consumer report conflict with and "stand[] as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress," those provisions of the Texas FCRA are also implicitly preempted by the FCRA (in addition to the express preemption under §§ 1681t(b)(1)(E) and 1681t(a)). *Aldridge*, 990 F.3d at 875 (finding state law preempted even where it "is not 'impossible' to comply with both federal and state law" because the law "would stand as an 'obstacle' to the accomplishment of" the federal law's objective).

75. PBSA and its members will be irreparably harmed if Texas is not enjoined from enforcing these provisions of the Texas FCRA.

76. Specifically, as described throughout this Complaint and incorporated here, enforcement of the Texas FCRA against PBSA members will force them to make material changes

to their day-to-day business operations to cease reporting information that they currently report in full compliance with the FCRA. Those required business changes will impose a higher cost of doing business in Texas and will require significant expenditures of time and resources.

77. Accordingly, PBSA and its members are entitled to the entry of an injunction prohibiting Texas's enforcement of Section 20.05 of the Texas FCRA to the extent its provisions impose more onerous restrictions on the content of consumer reports than the federal FCRA, because such provisions are expressly and implicitly preempted by federal law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Professional Background Screening Association respectfully requests the following relief:

    A.    Declaratory judgment, pursuant to 28 U.S.C. § 2201, that Tex. Bus. & Com. Code § 20.05 is preempted by the federal Fair Credit Reporting Act;

    B.    An injunction preventing the Defendant from enforcing Tex. Bus. & Com. Code § 20.05; and

    C.    Such other and further relief as the Court deems just and proper.

**TRIAL BY JURY IS DEMANDED.**

Dated: January 28, 2025

Respectfully submitted,

*/s/ Daniel Durell*
Daniel Durell
State Bar No. 24078450
daniel.durell@troutman.com
Lauren M. Fincher
State Bar No. 24069718
lauren.fincher@troutman.com
TROUTMAN PEPPER LOCKE LLP
300 Colorado Street, Suite 2100
Austin, Texas 78701
Telephone: (512) 305-4700
Facsimile: (512) 305-4800

ATTORNEYS FOR PLAINTIFF
PROFESSIONAL BACKGROUND
SCREENING ASSOCIATION